# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 26 | **DATE** | 6/7/2000 |
| **CASE TITLE** | Scott Dornhecker, et al vs. Ameritech Corporation | | |

MOTION:

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 7/5/2000 at 9:00 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Defendant's motion to dismiss (Doc. 7-1) granted without prejudice. Plaintiffs are invited to file an amended complaint, if they can cure the defects identified in this opinion, within twenty-one (21) days.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | | |
|---|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | | Document Number |
| | No notices required. | | number of notices | | | |
| ✓ | Notices mailed by judge's staff. | | JUN 0 8 2000 | | | 11 |
| | Notified counsel by telephone. | | date docketed | | | |
| | Docketing to mail notices. | | | | | |
| | Mail AO 450 form. | | docketing deputy initials | | | |
| | Copy to judge/magistrate judge. | | 6/7/2000 | | | |
| | | | date mailed notice | | | |
| ETV | courtroom deputy's initials | | | | | |
| | | | Date/time received in central Clerk's Office | ETV mailing deputy initials | | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SCOTT DORNHECKER, JOSE          )
SANCHEZ, and CAROLYN JOHNSON,   )
                                )
            Plaintiffs,         )
                                )
      v.                        )     No. 00 C 26
                                )
AMERITECH CORPORATION,          )     Judge Rebecca R. Pallmeyer
                                )
            Defendant.          )

## MEMORANDUM OPINION AND ORDER

Recent amendments to the Fair Credit Reporting Act ("FCRA") impose duties upon

persons who furnish information to credit reporting agencies. When a furnisher has received

notice from a credit reporting agency that the information it has provided is in dispute, the

furnisher is required to reinvestigate the credit information. *See* 15 U.S.C. § 1681s-2(b). This

case raises an issue of first impression in this district: whether a furnisher of credit

information may be civilly liable to a consumer under the FCRA for failing to properly

comply with the investigation duty once it has received notice of a dispute from a credit

reporting agency. Plaintiffs Scott Dornhecker ("Dornhecker"), Jose Sanchez ("Sanchez"), and

Carolyn Johnson ("Johnson"), consumers as defined by the FCRA, allege that Defendant

Ameritech opened phone service accounts on behalf of third persons who fraudulently used

Plaintiffs' names and other identifying information, and thereby allowed debt to be falsely

incurred in their names. Plaintiffs allege that Ameritech violated its duties as a "furnisher of

information" under the FCRA and that it committed various common law violations by: (1)

inadequately investigating the information after either Plaintiffs themselves, collection agencies, or credit reporting agencies notified Ameritech that the information was disputed; (2) attempting to collect these debts after having received such notice that the accounts were fraudulently procured; (3) distributing false information about Plaintiffs' credit history; and (4) making false statements about Plaintiffs' credit history. Ameritech moves to dismiss Plaintiffs' federal and state law claims pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). For the following reasons, Ameritech's motion is granted in part and denied in part.

## FACTUAL BACKGROUND

For purposes of this motion to dismiss, the court accepts Plaintiffs' allegations as true. Plaintiffs each allege that because Ameritech failed to appropriately screen account applicants, it opened accounts on behalf of third persons who fraudulently used Plaintiffs' personal identifiers.[1] (Compl. ¶ 9.) As a result, each Plaintiff incurred debt with Ameritech for services which they never received. (*Id.* ¶ 10.) Seeking satisfaction of the unpaid balances, Ameritech eventually enlisted the assistance of collection agencies, and reported the bad debt to credit reporting agencies. (*Id.* ¶¶11-12.)

Each Plaintiff became aware of the fraudulent accounts either through the receipt of a collection letter, or through the denial of an application for a credit line with another

---

[1] The Complaint defines the term "personal identifiers" as "[a] person's name, social security number, address, credit history, other information that is used as identification of a particular person." (Comp. ¶ 7.)

creditor. Specifically, on three separate instances, Dornhecker received notification of unpaid balances that had accrued on accounts in his name with Ameritech. In both 1994 and 1996, two separate collection agencies acting on behalf of Ameritech contacted Dornhecker in an attempt to collect an unpaid balance accrued for phone services. (*Id.* ¶¶ 15-24.) On both occasions, the amount was eventually deleted from his credit report and the account closed. (*Id.* ¶¶ 18, 24.) On a third occasion, on August 17, 1998, after having requested a higher credit line on a credit card account, Dornhecker received a letter from his credit card company denying his application based on his credit report. (*Id.* ¶¶ 25-26.) After receiving notice of the denial of credit, Dornhecker requested a copy of his credit report from Trans Union, a credit reporting agency. (*Id.* ¶ 27.) At the time, Dornhecker's credit report included an unpaid balance for phone services on accounts with Ameritech that Dornhecker had never opened. (*Id.* ¶ 28.) On August 18, 1998, Dornhecker notified Ameritech that he disputed the debt. (*Id.* ¶ 29.) Sometime in that month, Dornhecker also contacted Trans Union, who assisted him in filing a formal complaint against Ameritech. (*Id.* ¶ 30.) Plaintiff alleges that Trans Union informed him that it would contact Ameritech on his behalf. (*Id.* ¶ 31.) Plaintiff alleges Ameritech rectified the error on October 2, 1998. (*Id.* ¶ 37.)[2]

---

[2]     Since that time, Dornhecker has filed complaints with the Better Business Bureau and the Illinois Attorney General requesting compensation from Ameritech. (Compl. ¶¶ 40-49.) The court is unclear about the result of either complaint, although it does appear that Ameritech informed the Office of the Attorney General that Ameritech "requested that all charges on the account be removed." (*Id.* ¶ 49.) Neither party has addressed the issue of whether any relief granted to Dornhecker pursuant to these complaints may be duplicative of relief sought here.

Similarly, Plaintiffs Sanchez and Johnson received letters from collection agencies attempting to collect unpaid balances for phone services on Ameritech's behalf. Plaintiff Johnson received a collection letter on January 28, 1999 and notified Ameritech of the dispute sometime thereafter. (*Id.* ¶¶ 52, 55.) As of the time of filing this suit, the matter had not been resolved. Plaintiff Sanchez received letters from two separate collection agencies, once on October 26, 1998 and another on February 9, 1999, apparently attempting to collect the same debt. (*Id.* ¶¶ 58, 61.) Although Sanchez resolved the matter with the first collection agency (*Id.* ¶ 60), as of the date of the filing of the Complaint on January 3, 2000, the second collection agency continues to attempt to collect the debt from Sanchez on behalf of Ameritech. (*Id.* ¶ 64.)

Plaintiffs Dornhecker and Sanchez (but not Johnson) allege that Ameritech violated the FCRA, 15 U.S.C. § 1681s-2(b)(1), by failing to properly investigate the disputed credit information. (Compl., Count I ¶¶ 68-76.) In addition, all Plaintiffs bring Illinois common law claims of negligence (Count II ¶¶ 77-81), defamation (Count III ¶¶ 82-86), and invasion of privacy (Count IV ¶¶ 87-91) against Ameritech based on its conduct in opening the accounts, investigating (or failing to investigate) the disputed credit information, reporting the debts to credit reporting agencies, and attempting to collect the debts.

Ameritech moves to dismiss the complaint, making several arguments. First, Ameritech argues that Dornhecker and Sanchez lack standing to allege a violation of 15 U.S.C. §1681s-2(b)(1) as it creates no duties enforceable by consumers. In any event, Ameritech argues, this section of the FCRA should not be applied retroactively to events that

4

occurred before its effective date. Further, assuming Dornhecker and Sanchez have standing, Ameritech argues that Dornhecker's FCRA claim is barred by the two-year statute of limitations applicable to actions brought under the FCRA, and that neither Dornhecker nor Sanchez can state a claim for relief under the FCRA. With respect to all Plaintiffs' state law claims, Ameritech argues that they are pre-empted by the FCRA, or, in the alternative, are not sufficiently pleaded. Ameritech further argues that Dornhecker's negligence claim and all Plaintiffs' defamation claims are time-barred. Finally, Ameritech argues that this court lacks jurisdiction over Johnson's claims because she asserts no federal question jurisdiction and diversity of citizenship does not exist. This court will address each of Defendant's arguments in turn.

## DISCUSSION

### A.    Standard of Review

In deciding a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court considers the allegations in the complaint to be true and views all well-pleaded facts and any reasonable inferences drawn from the facts in the light most favorable to the plaintiff. *See Maple Lanes, Inc. v Messer,* 186 F.3d 823, 824-25 (7th Cir. 1999). Dismissal is proper under 12(b)(6) if the Plaintiff can establish no set of facts upon which relief can be granted. *See Henson v. CSC Credit Servs.,* 29 F.3d 280, 284 (7th Cir. 1994). A complaint should not be dismissed unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). However, to withstand a motion to dismiss, a complaint must allege facts

sufficiently setting forth the essential elements of the cause of action. *See Lucien v. Preiner,* 967 F.2d 1166, 1168 (7th Cir. 1992).

When a party moves for dismissal under Rule 12(b)(1), challenging the factual basis for jurisdiction, the plaintiff bears the burden of persuading the court that subject matter jurisdiction exists. *See Kontos v. United States Dept. of Labor,* 826 F.2d 573, 576 (7th Cir. 1987). On a Rule 12(b)(1) motion, the nonmoving party must prove to the court by a preponderance of the evidence, or proof to a reasonable probability, that jurisdiction exists. *See NFLC, Inc. v. Devcom Mid-America, Inc.* 45 F.3d 231, 237 (7th Cir. 1995).

### B.  Count I:  FCRA Claims

#### 1.  Private Right of Action

Ameritech urges the dismissal of Dornhecker's and Sanchez's FCRA claims, arguing that there is no private right of action under the section of the Act requiring furnishers of information to investigate disputed credit information. Nothing in the language of Section 1681s-2 explicitly provides that Subsection (b) is only enforceable by federal and state officials. Ameritech argues, however, that the statutory framework of relevant section of the FCRA makes it apparent that furnishers' obligations created by Section 1681s-2 inure to the benefit of credit reporting agencies, not consumers. Relying on the plain language of the FCRA, Plaintiffs argue that furnishers' duties under Subsection (b) are indeed owed to consumers. According to Plaintiffs, this is illustrated by the fact that furnishers who violate their duties under Subsection (a) are explicitly exempted from civil liability. In Plaintiffs' view, the fact that Congress included this exemption from liability under Subsection (a)

indicates that Congress did not intend to exempt furnishers from liability under Subsection (b). Plaintiffs argue that Section 1681n and 1681o of the FCRA, which provide consumers with a cause of action against credit reporting agencies for willful or negligent noncompliance with the requirements of the Act, should therefore be extended to requirements imposed upon furnishers by Section 1681s-2(b) of the act.

Plaintiffs Dornhecker and Sanchez allege that Ameritech is a furnisher of information to credit reporting agencies, and as such is charged with the obligations set forth in Section 1681s-2(b). (Compl. ¶ 70.) Section 1681s-2 is the result of 1996 amendments to the FCRA. *See* Consumer Credit Reporting Reform Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009-448-49 (1996). Subsection (a) imposes upon furnishers of information the duty to provide accurate information to credit reporting agencies. The duties created by Subsection (b) arise only after the furnisher receives notice from a consumer reporting agency that a consumer is disputing credit information. Once a furnisher has received such notice, it must:

> (A)    conduct an investigation with respect to the disputed information;
> (B)    review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
> (C)    report the results of the investigation to the consumer reporting agency; and
> (D)    if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.

15 U.S.C. § 1681s-2(b)(1)(A-D). The two remaining subsections of 1681s-2, (c) and (d), provide limitations on liability and enforcement only explicitly with respect to Subsection (a). Specifically, Subsection (c) provides that the sections of the FCRA which provide for

civil liability, Sections 1681n and 1681o, do not apply to "any failure to comply with subsection (a)[.]" 15 U.S.C. § 1681s-2(c). Subsection (d) limits enforcement of Subsection (a) to federal and state officers. 15 U.S.C. § 1681s-2(d). Neither Subsection (c) or (d) explicitly references Subsection (b). Nor does any of these subsections contain an explicit reference to a private right of action for enforcement.

Only two district courts have addressed the issue of whether a consumer has standing to sue a furnisher of information for failing to comply with the obligations set forth in Subsection (b), reaching opposite conclusions. *Compare Campbell v. Baldwin*, 90 F. Supp. 2d 754 (E.D. Tex. 2000) (furnishers who violate 1681s-2(b) are not exempted from civil liability to consumers); *with Carney v. Experian Information Solutions*, 57 F. Supp. 2d 496 (W.D. Tenn. 1999) (duties created by 1681s-2(b) owed to credit reporting agency, not to consumer). The *Carney* court noted that because the duties set forth in Subsection (b) are triggered only upon notice from a consumer reporting agency, not upon notice from the consumer, the obligations created by Subsection (b), "appear to exist solely for the benefit of consumer reporting agencies which face liability under the remainder of the FCRA to the consumer for erroneous and inaccurate reporting." *See Carney*, 57 F. Supp. 2d at 502. Under this interpretation of the statutory framework, the court concluded that the duties created by Subsection (b) are owed only to the consumer reporting agency, thereby exempting a furnisher from suits brought by individual consumers. *See id.*

To the contrary, the *Campbell* court held "there is no authority supporting the proposition that the FCRA does not create a private right of action[.]" *See Campbell*, 90 F.

8

Supp. 2d at 755. While the court noted that furnishers are exempt from civil liability for violations of Subsection (a), it also pointed out that the FCRA contains provisions giving consumers causes of action against "persons" who willfully or negligently fail to comply with any requirement imposed under the Act. *See id.* (citing 15 U.S.C. §§ 1681n, 1681o). Ultimately, the court concluded that furnishers who fail to comply with the obligations set forth in Subsection (b) are not exempt from civil liability, and allowed an individual consumer to proceed with its claim under Subsection (b). *See id.*

This court concludes that the holding in *Campbell* is consistent with the directives from the Supreme Court in determining whether an implied private right of action exists as explained in *Cort v. Ash*, 422 U.S. 66, 78 (1975). In *Ash*, the Court set forth four factors for consideration in determining whether a private remedy is implicit in a statue not expressly providing for one: (1) whether the plaintiff is a member of the class for whose benefit the statute was enacted; (2) whether the legislative history indicates any legislative intent, explicit or implicit, either to create or deny such a remedy; (3) whether the implication of a private remedy would frustrate the underlying purposes of the legislative scheme; and (4) whether the cause of action one in traditionally relegated to state law. *See Ash*, 422 U.S. at 78. Opinions issued subsequent to *Ash* have explained that the ultimate issue is whether Congress intended to create a private right of action. *See California v. Sierra Club*, 451 U.S. 287, 293 (1981); *Cannon v. University of Chicago*, 441 U.S. 677, 689-94 (1979); *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 23-24 (1979).

Pursuant to *Ash* and its progeny, the court concludes that individual consumers do

9

have a private right of action against a furnisher of information under Subsection (b) of Section 1681s-2 of the FCRA. The analysis begins with the language of the statute itself. *See Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979). The statutory provision in question, Section 1681s-2, explicitly limits civil liability for furnishers who violate Subsection (a). *See* 15 U.S.C. § 1681s-2(c). Nothing in the language of Section 1681s-2 explicitly suggests that such limitation is also applicable to Subsection (b) violators.

Turning to the first factor in *Ash*, it is apparent that Dornhecker and Sanchez are members of the class of people sought to be protected by the enactment of the FCRA. As the product of Congressional concern over abuses in the credit reporting industry, the FCRA was enacted to "protect an individual from inaccurate or arbitrary information . . . in a consumer report[.]" *See Pinner v. Schmidt*, 805 F.2d 1258, 1261 (5th Cir. 1986). Indeed, in the Act, Congress explicitly identified the importance of credit reporting in a manner "which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." *See* 15 U.S.C. § 1681.

Next, the *Ash* analysis requires consideration of legislative history. The legislative history evidences an affirmative attempt on the part of Congress to hold furnishers of information accountable "if they continue to supply inaccurate data after they have been notified." See 139 Cong. Rec. S4561-02, S4568, 1993 WL 102951, (1993) (statement of Sen. Bryan). To whom Congress intended to make furnishers accountable is less clear. In a "Summary of Managers' Amendment to S. 783" report accompanying a version of the reform bill as introduced in the Senate, however, Senator Bryan attempted to clarify the section

10

imposing duties on furnishers. Senator Bryan submitted the summary report which noted that pursuant to Subsection (a), no private right of action exists against furnishers for failure to provide accurate information. The summary further stated, however, that "[t]he legislation creates a private cause of action only for failure to properly reinvestigate information and correct mistakes once the furnishers has been formally notified of a problem[.]" *See* 140 Cong. Rec. S5026-02, S5027 (1994), 1994 WL 164263. Although not expressly added to Section 1681s-2, this testimony suggests that Congress did not intend to limit civil liability under Subsection (b).

Next, a private remedy in enforcing § 1681s-2(b) does not frustrate the purpose of the FCRA's scheme. It is important to note that other provisions of the FCRA provide consumers with a private right of action. *See* 15 U.S.C. § 1681n, 1681o. In addition, prior to the 1996 amendments to the FCRA, no duties were imposed upon furnishers of information. Therefore, the addition of statutory obligations for furnishers of information suggests that Congress found the amendment essential to the overall purpose of the FCRA: to protect consumers from the ill effects of erroneous credit reporting.

Applying the final *Ash* factor, the implication of a private right of action is appropriate because Congress expressly intended for the FCRA to co-exist with state consumer protection laws, except to the extent that those laws are inconsistent. *See* 15 U.S.C. § 1681t. Further, the court notes that in an opinion letter, the Federal Trade Commission stated that "Section [1681s-2(b)] imposes clear investigative duties on furnishers when they receive disputes from [credit reporting agencies], and allows consumers to sue violators of this subsection to obtain

damages[.]" *See* FCRA Staff Opinion: Brinckerhoff-Watkins, (June 24, 1999) <http://www.ftc.gov/os/statutes/fcra/watkins.htm>. Applying the four *Ash* factors, and according appropriate deference to the FTC staff opinion, *see Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842-44 (1984) (courts should give deference to an executive agency's construction of a statute it is entrusted to administer), the court concludes that individual consumers may bring a cause of action against furnishers for failing to comply with Subsection (b). Therefore the court denies Ameritech's motion to dismiss on the grounds that Dornhecker and Sanchez have no private right of action under Section 1681s-2(b).

### 2.    Effective Date of FCRA Claims

Ameritech correctly notes that the obligations created by Section 1681s-2 of the FCRA did not become effective until September 30, 1997. *See* Consumer Credit Reporting Reform Act of 1996, Pub.L. 104-208, 110 Stat. 3009-446 (1996). As such, Ameritech argues, Dornhecker has no claim under this Section for events allegedly occurring before that date. This court agrees, concluding that Dornhecker has no claim against Ameritech for any failure to comply with affirmative duties under the FCRA prior to September 30, 1997. Accordingly, Ameritech's motion to dismiss Dornhecker's FCRA claim is granted to the extent that it pertains to events which arose before the effective date of Section 1681s-2.

### 3.    Statute of Limitations

Next, Defendant argues that Dornhecker's claim is barred by the statute of limitations, requiring that any action be brought within two years from the date on which the liability

arises. *See* 15 U.S.C. § 1681p. Having determined that a private right of action is available to consumers to enforce Subsection (b), the court concludes that because the two-year statute of limitations set forth in Section 1681p applies to the "enforce[ment] of any liability under [the Act], that statute of limitations applies to actions brought pursuant to Section 1681s-2(b). Because this court has already dismissed Dornhecker's claims that arose prior to the September 30, 1997 effective date, the only remaining claim Dornhecker asserts arose in August 1998. (Compl. ¶¶ 25-30.) Plaintiffs filed their Complaint on January 3, 2000, within two years of Ameritech's alleged August 1998 failure to comply with its duty to investigate disputed information. Accordingly, Ameritech's motion to dismiss Dornhecker's FCRA claim on a statute of limitations ground is denied.

4. **Allegations of Fact Giving Rise to Violations of FCRA.**

As its last attack on the FCRA claims, Ameritech argues that Dornhecker's and Sanchez's allegations fail to state a claim upon which relief may be granted. Specifically, Ameritech asserts that "it is 'patently improper and insufficient' to plead the essential elements 'upon information and belief.'" (Def's Mem., at 6 (quoting *Swift v. First U.S.A. Bank*, No. 98 C 8238, 1999 WL 965449, at *4 (N.D. Ill. Sept. 30, 1999)).) Ameritech further asserts that the Complaint "provide[s] no clue how Ameritech's 'improper' conduct violated the FCRA provision under which they have sued." (Def's Mem., at 7.) Plaintiffs respond by arguing that pleading "upon information and belief" is permissible in cases not involving fraud, and in any event, even if Plaintiffs were required to plead with particularity, information regarding Ameritech's investigations is solely within its knowledge. (Pl's

Opposition, at 6.)

In support of its argument that it is never permissible to allege wrongdoing "upon information and belief," Ameritech relies on *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992). That case is distinguishable, however, as it involved allegations of fraud which must be pleaded with particularity under Federal Rule of Civil Procedure 9(b). *See id.* at 683. Indeed, the *Bankers Trust* court acknowledged this distinction: "Even before Rule 11 was amended to require [reasonable precomplaint inquiry], . . . it was understood that the duty to plead the circumstances constituting fraud with particularity could not be fulfilled by pleading those circumstances on 'information and belief[.]'" *See id.* at 684.

Additionally, Ameritech cites to a recent FCRA decision finding allegations based on "information and belief," insufficient to state a claim. *See Swift v. First U.S. Bank*, No. 98 C 8238, 1999 WL 965449, at *4 (N.D. Ill. Sept. 30, 1999). In holding that pleading upon information and belief is never sufficient under the federal rules, the *Swift* court cited to *Bankers Trust*, which, as noted previously, involved a fraud claim. In any event, *Swift* is distinguishable from this case because it also involved allegations of fraud in that the defendant allegedly obtained the plaintiff's credit report under false pretenses. *See id.* at *4. Without dismissing the complaint on those grounds, however, the *Swift* court went on to say that absent the offending "upon information and belief" language, the plaintiff still failed to plead any set of facts setting forth an FCRA violation. *See id.*

In this case, Plaintiffs do not allege fraud, but rather that Ameritech did not properly investigate disputed information. (Compl. ¶74.) Contrary to Ameritech's assertion, Sanchez

does specifically allege that after notifying both Ameritech and a collection agency that he disputed the credit information, he nevertheless continues to receive letters from the collection agency attempting to collect the Ameritech debt. (Compl. ¶ 64.) Drawing all reasonable inferences Sanchez's favor, this paragraph may be read as establishing that the inaccurate information was never rectified, and is therefore sufficient to allege that Ameritech failed to properly investigate the dispute. Sanchez has, thus, set forth some facts outlining the basis of his FCRA claims. *Compare Panaras v. Liquid Carbonic Indus. Corp.*, 74 F.3d 786, 792 (7th Cir. 1996) (plaintiff failed to support legal conclusions with appropriate factual representations where plaintiff alleged no facts whatsoever to support its conclusory allegation of bad faith). Nevertheless, Sanchez's FCRA pleadings are otherwise insufficient. As noted earlier, Section 1681s-2(b) triggers a furnisher's duty to investigate allegedly erroneous information when that furnisher has received notice from a *consumer reporting agency* that the credit information is disputed. Nowhere does Sanchez make such an allegation; instead he alleges that *he* notified Ameritech of the dispute. For that reason, Sanchez's FCRA claim is dismissed without prejudice, and therefore the court also dismisses his pendent state law claims.

Dornhecker's allegations, although they include a claim that a credit reporting agency did notify Ameritech of his dispute, are more problematic. Dornhecker attempts to state a claim against Ameritech for "failing to properly investigate the false and disputed information" in violation of Section 1681s-2(b). (Compl. ¶ 75.) Yet, when setting forth the factual allegations to support that claim, Dornhecker alleges that after less than two months

of some back-and-forth correspondence, Ameritech sent him a letter indicating that his "credit was being cleared" and that he should "allow 60 to 90 days for the bad debt to be removed." (Comp. ¶¶ 27-37.) As Dornhecker has alleged that Ameritech investigated and corrected inaccurate information, the court is hard pressed to conclude that Dornhecker can now claim that Ameritech failed to properly investigate his credit information. Although Dornhecker has alleged that he was initially denied a higher credit line on one of his credit cards because of the inaccurate bad debt information on his credit report (Compl. ¶ 26), the court notes that Dornhecker alleges that Ameritech complied with its duties under Section 1681s-2(b) once notified of this adverse action. The court concludes that Dornhecker has "pleaded himself out of court." *Cf. Northern Trust Co. v. Peters*, 69 F.3d 123, 129 (7th Cir. 1995). Accordingly, Dornhecker's FCRA claim is dismissed without prejudice, and therefore the court also dismisses his pendant state law claims.

## C. Supplemental Jurisdiction Over Johnson's Claims

Johnson does not assert a federal question claim, but urges the court to exercise its supplemental jurisdiction over her state law claims, arguing that her state law claims "derive from the same transactions" as Dornhecker's and Sanchez's claims. (Pl.'s Opposition, at 9.) Section 1367 states "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367. A district court should consider and weigh the factors of judicial economy, convenience, fairness and comity in deciding whether to exercise

jurisdiction over pendant state-law claims. *See Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994).

Johnson alleges Illinois common law actions for negligence, invasion of privacy and defamation. She asserts that her state law claims are identical to the claims asserted by Dornhecker and Sanchez and arise out of a similar fact pattern, and thus all of the claims arise out of a common nucleus of operative fact. (Pl's Opposition, at 9.) To support her argument, Johnson relies on *In re Prudential Ins. Co. of Amer. Sales Practices Litig.*, 148 F.3d 283, 302 (3d Cir. 1998), *cert. denied, Krell v. Prudential Ins. Co. of Amer.*, 525 U.S. 1114 (1999), in which the court that the federal and state claims asserted by a class of plaintiffs were "inextricably intertwined" because there was a common scheme by defendant to defraud.

Johnson's reliance on *Prudential* is misplaced. Unlike the common scheme to defraud in *Prudential*, where the defendant allegedly used false and misleading sales presentations, policy illustrations, and marketing materials disseminated on a nationwide scale, this case involves separate and individual investigations relating to distinct customer accounts opened by different third parties. The Plaintiffs' claims here do not derive from a common nucleus of operative fact; instead they purportedly arise from unrelated events whereby Ameritech opened accounts for third parties who fraudulently used Plaintiffs' personal information. Accordingly, the court declines to exercise its supplemental jurisdiction over Johnson's state law claims, and therefore grants Ameritech's motion to dismiss her claims.

## D. Counts II, III, IV: Dornhecker's and Sanchez's Common Law Claims

As this point, each Plaintiffs' claims have been dismissed. Nevertheless, despite having

dismissed both Sanchez's and Dornhecker's FCRA claims for failure to state a cause of action, the court will discuss their state law claims in the event either Dornhecker or Sanchez is able to amend his allegations to assert a claim under Section 1681s-2(b) of the FCRA. The court so acts to prevent the parties from having to re-argue motions to dismiss the state law claims, assuming Dornhecker and Sanchez are able to plead an FCRA claim. Dornhecker and Sanchez bring three common law actions against Ameritech: negligence, defamation, and invasion of privacy. In Count II of their Complaint, Plaintiffs allege that Ameritech acted negligently by breaching its duty to use reasonable care in determining the true identity of individuals requesting phone service. (Compl. ¶ 78.) In Count III, Plaintiffs bring an invasion of privacy claim, alleging that Ameritech published and distributed false negative credit information to debt collectors and credit reporting agencies with knowledge or in reckless disregard of the of the falsity of the debts. (Compl. ¶¶ 83-84.) Finally, in Count IV, Plaintiffs allege that Ameritech defamed them by making and publishing false statements about their credit history to collection agencies and credit reporting agencies. (Compl. ¶ 88-89.)

1.     Preemption and the FCRA

Ameritech argues that Plaintiffs' state law claims are pre-empted by Section 1681t(b)(1)(f) of the FCRA, which prohibits state law from regulating the obligations of a furnisher of information as regulated by Section 1681s-2.[3] Plaintiffs counter, arguing that

_____

[3]     The relevant statutory provision states: "No requirement or prohibition may be imposed under the laws of any state . . . with respect to any subject matter regulated under
(continued...)

another provision of the FCRA explicitly allows suits "in the nature of defamation, invasion of privacy, or negligence . . ." where the furnisher acted with malice or willful intent to injure the consumer.[4]

With respect to pre-emption by Section 1681t(b)(1)(F), Ameritech relies on *Korotki v. Attorney Servs. Corp.*, 931 F. Supp. 1269, 1280 (D. Md. 1996), *aff'd*, 131 F.3d 135 (4th Cir. 1997). That case involved a plaintiff who brought an FCRA action against a law firm and its attorney, and also asserted a common law invasion of privacy claim. Granting summary judgment in favor of the defendant on the invasion of privacy claim, the court concluded that state statutory law authorized the privacy intrusion to the extent it occurred in that case. *See id.* at 1280. Without expressly ruling on the pre-emption issue, the court did note that "[i]f Maryland tort law imposed such liability for those actions, that law would be inconsistent with the FCRA and, therefore, § 1681t would preempt that law." *See id.*

---

(...continued)
. . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . ." 15 U.S.C. § 1681t(b)(1)(F).

[4]    This section, entitled "limitation of liability," reads:
[n]o consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken averse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.
15 U.S.C. § 1681(h)(e).

The dicta in *Korotki* does not control the issue. Section 1681s-2 regulates the "[r]esponsibilities of persons who furnish information to consumer reporting agencies." Common law tort claims, such as claims for negligence, defamation, or invasion of privacy may not fairly be characterized as imposing any requirement or prohibition on persons who furnish information to consumer reporting agencies, other than the general standard of reasonable care such claims impose upon all persons. Furthermore, at least the negligence claims encompass Ameritech's alleged breach of duty committed by opening accounts based on stolen information, actions not regulated by the FCRA. Therefore, the court concludes that these common law causes of action are not pre-empted by Section 1681t(b)(1)(F) of the FCRA.

Still, the court must determine whether the state law causes of action are pre-empted by Section 1681h(e) of the FCRA. Pursuant to Section 1681h(e), Dornhecker and Sanchez may only bring the common law actions alleged here by sufficiently pleading that Ameritech furnished false information to a consumer reporting agency with malice or willful intent to injure them. The term willful is not defined under the FCRA, but courts have interpreted it as requiring a showing that the defendant "knowingly and intentionally committed an act in conscious disregard for the rights of others." *Stevenson v. TRW Inc.*, 987 F.2d 288, 293 (5th Cir. 1993). Further, for purposes of evaluating whether a defendant is entitled to qualified immunity under Section 1681h(e) in cases of defamation and invasion of privacy, courts use the following definition of malice: a statement will be deemed to have been made with malice if made "with knowledge that it was false or with reckless disregard of whether it was false

or not." *See, e.g., Whelan v. Trans Union Credit Reporting Agency,* 862 F. Supp. 824, 834 (E.D.N.Y. 1994) (citing *New York Times Co. v. Sullivan,* 376 U.S. 254, 279-80 (1964)). In the negligence context, the court notes that under Illinois law, intentional or malicious breaches of ordinary care rise to the level of intentional or willful and wanton conduct, and are inconsistent with an allegation of ordinary negligence. *See Ziarko v. Soo Line R.R. Co.,* 161 Ill.2d 267, 272-73, 641 N.E.2d 402, 405 (Ill. 1994) (describing difference between negligent conduct, willful and wanton conduct, and intentional conduct). In their negligence count, Plaintiffs allege that in extending credit and offering services to consumers, Ameritech breached its duty to use reasonable care in determining and verifying the identity of persons requesting service. (Compl. ¶78.) Plaintiffs further allege that this breach was "malicious and willful" because: (1) Ameritech "stored and distributed false information . . . with reckless disregard for the truth or falsity of the information;" (2) Ameritech continued to attempt to collect on the accounts even after Plaintiffs notified Ameritech of the error; and (3) in response to a question from Johnson about using another individual's personal identifiers, an Ameritech representative allegedly stated, "'it's easy, you should try it sometime.'" (Id. ¶ 80.) Under liberal federal pleading standards, the court concludes that Plaintiffs intended to allege willful and wanton conduct, not negligent conduct, on the part of Ameritech. Conduct may be willful and wanton under Illinois law if was intentional or if it was committed with reckless disregard for the safety of others. *See id.*

Ameritech cites to a number of cases decided upon motions for summary judgment wherein courts granted summary judgment to defendants based on plaintiffs' inability to

establish that defendants' conduct was the product of malice or willful intent. (Pl.'s Memo., at 10-11 (citing cases).) This court first notes that the purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits of the case. Therefore, it is not necessary, nor is it possible, for the court to decide at this stage whether Plaintiffs will be able to establish proof of malice or willful intent on the part of Ameritech. It is sufficient that Plaintiffs have made specific factual allegations regarding malice[5] and willfulness. In Count II, Plaintiffs have alleged that the Plaintiffs informed Defendant that they did not owe any money, and Ameritech continued to attempt to collect that money, and that Ameritech stored and distributed false information about Plaintiffs with reckless disregard for the truth or falsity of the information. (Compl. ¶ 80.) In Count III, they allege that Ameritech published the false information with knowledge that the personal information and debt was false, and with reckless disregard for the truthfulness. (*Id.* ¶ 83, 85.) Finally, in Count IV, Plaintiff alleged that Ameritech published the false statements about them with actual malice, claiming that Ameritech knew the statements were false and nevertheless acted with reckless disregard for the truth. (*Id.* ¶ 95.) Drawing all reasonable inferences in Plaintiffs' favor, Section 1681h(e) does not bar their common law claims, as they have pleaded sufficient allegations that Ameritech acted with malice and willful intent. The court pauses here, however, to note that the notion of "willful negligence" is a difficult one to understand. Indeed, the court remains concerned about how Plaintiffs will be able to prove willfulness

---

[5] Federal Rule of Civil Procedure 9(b) specifically allows malice to be averred generally. *See* FED. R. CIV. P. 9(b).

as it can conceive of no basis for a conclusion that Ameritech would have been motivated to create false accounts, on which the court assumes Ameritech would have difficulty collecting. Ameritech's actions may well be negligent, but it is hard to imagine that these actions were willful or wanton.

## 2.    Whether the common law claims are time barred.

First, this court has already determined that Dornhecker's claims which took place before §1681s-2(b)'s effective date, September 30, 1997, are time barred. Dornhecker nevertheless, has a remaining claim arising from events that occurred in August 1998. Under Illinois law, personal injury actions must be brought within two years after the cause of action accrued. *See* 735 ILCS 5/13-202. As the Complaint was filed on January 3, 2000, Dornhecker's negligence claim is timely.

Second, Illinois has a one-year statute of limitations for asserting defamation and invasion of privacy. *See* 735 ILCS 5/13-201. A cause of action accrues at the time Plaintiff knew or should have known of the allegedly defamatory or false report. *See Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.*, 61 Ill.2d 129, 136, 334 N.E.2d 160, 164 (Ill. 1975). Plaintiffs argue that because they allege that Ameritech acted with malice or with the willful intent to harm, the cause of action does not accrue until Plaintiffs knew or should have known the conduct was malicious or willful. (Pl's Opposition, at 12-13.) This court does not read the discovery rule so broadly as to extend the statute of limitations until malice or bad intent is actually discovered. Indeed, the discovery rule's purpose is to serve the ends of justice for plaintiffs while at the same time balancing the increase in difficulty of

23

proof which accompanies the passage of time. *See Tom Olesker's Exciting World of Fashion,* 61 Ill.2d at 133, 334 N.E.2d at 162. The ends of justice allow the Plaintiffs to begin the running of the statute of limitations when they discovered the false and alleged defamatory report.

Accordingly, Plaintiff Dornhecker's defamation and invasion of privacy claims are time barred. Plaintiff Dornhecker discovered the fraudulent report at the very latest in September 1998. (Compl. at ¶¶ 33-36.) On the other hand, Plaintiff Sanchez's claims were timely filed in January 2000. Although he first discovered the fraudulent debt in October 1998, as far as Sanchez knew the debt had been removed from his credit record. (*Id.* at ¶¶ 59-60.) On February 9, 1999, a separate incident occurred during which Sanchez became aware again of inaccurate reporting when another collection agency attempted to collect an Ameritech debt from him. (*Id.* at ¶ 61.) As such, a separate cause of action accrued in February 1999, and Sanchez timely filed his defamation and invasion of privacy claims in January 2000.

### 3. Failure to Sufficiently Plead Special Damages.

A *per quod* defamation claim may be brought where, as in this case, the defamatory character of the statement is not apparent on its face, and resort to extrinsic circumstances is necessary to demonstrate its injurious meaning. *See Bryson v. News America Publications,* 174 Ill.2d 77, 88, 672 N.E.2d 1207, 1221 (Ill. 1996). In a *per quod* defamation action, the plaintiff must plead and prove special damages, meaning actual damage to his reputation and pecuniary loss resulting from the defamatory statement. *See id.* at 1222. This court has already

dismissed Plaintiff Johnson and Dornhecker's defamation claims, and thus the only issue remaining is whether Sanchez's defamation claim should be dismissed for failure to sufficiently plead special damages.

Plaintiffs cite a recent Illinois Appellate Court decision holding that a plaintiff satisfied the special damages element where she experienced a pecuniary loss as a result of the denial of her loan application. *See Voyles v. Sandia Mortgage Corp.*, 311 Ill. App. 3d 649, ___, 724 N.E.2d 1276, 1283 (2d Dist. 2000). While this case arguably supports the proposition that Dornhecker has sufficiently pleaded special damages since he claims he was denied credit, it provides no support for Sanchez, who only generally alleges special damages. Under Illinois law, a plaintiff asserting a *per quod* defamation claim must not only plead special damages, he must set forth extrinsic facts to satisfy the *per quod* action. *See Taradash v. Adelet/Scott-Fetzer Co.*, 260 Ill. App. 3d 313, 318, 628 N.E.2d 884, 888 (1st Dist. 1993). Although the Complaint generally alleges "Plaintiffs incurred special damages and pecuniary loss because publication of the defamatory information to credit agencies impaired their reputations for creditworthiness and prevented them from obtaining credit and/or telephone accounts," (Compl. ¶ 91), Sanchez never alleges any facts suggesting that his reputation for creditworthiness was impaired, or that he applied for and was denied credit. Therefore, Sanchez's defamation claim is dismissed without prejudice. If Sanchez moves to amend his claim to include facts supporting his allegations of special damages, he is further directed to specify which statements in the Ameritech reports he alleges are defamatory. *See Derson Group, Ltd. v. Right Management Consultants, Inc.*, 683 F. Supp. 1224, 1229 (N.D. Ill. 1988)

("[Defamation Plaintiff does not satisfy the requirements of notice pleading unless he specifically alleges the words said to be actionable.").

## CONCLUSION

Defendant's motion to dismiss (Doc. 7-1) is granted without prejudice. Plaintiffs Dornhecker and Sanchez have standing to sue Ameritech under 15 U.S.C. 1681s-2(b). However, Dornhecker's FCRA claims arising before the effective date of that provision are dismissed. Further, Dornhecker's and Sanchez's remaining FCRA claims are dismissed without prejudice as inadequately pleaded. Additionally, Johnson's common law claims are dismissed in their entirety for lack of subject matter jurisdiction. Assuming Sanchez amends his FCRA allegations, his defamation claim is dismissed without prejudice for failure to plead specific damages. Finally, assuming that Dornhecker amends his FCRA allegations, the court notes that his defamation and invasion of privacy claims are now time-barred.

ENTER:

Dated: June 7, 2000

REBECCA R. PALLMEYER
United States District Judge